Lynette Negbi DEAN, Hollis R. Dean, and James C. Wilbourn, Individually and as Independent Executor of the Estate of James Caffery Wilbourn and Attorney–in–Fact for Mary C. Wilbourn, Appellants,

v.

LAFAYETTE PLACE (SECTION ONE) COUNCIL OF CO–OWNERS, INC., Appellee.

No. 01–98–00581–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 10, 1999.

Ann Ryan Robertson, Attorney at Law, Houston, for Appellant.

Marc D. Markel, John Bradley Mitchell, Stephanie L. Quade, Roberts, Markel & Folger, L.L.P., Houston, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices O'CONNOR and TAFT.

## OPINION

SCHNEIDER, Chief Justice.

This case concerns the validity of an amendment to a condominium declaration. The appellants, homeowners in the condominium complex, contend the condominium declarations were improperly amended. Appellee, the board of owners of the condominium complex (the Board), contends (1) the declaration was properly amended, or, alternatively, (2) the appellants ratified the disputed amendment. After a bench trial, the court held (1) the declarations had been improperly amended, but (2) the appellants had ratified the amendment. Accordingly, the trial court entered a take-nothing judgment for appellants and declared the disputed amendment valid and enforceable. We affirm.

## BACKGROUND

### A. The 1966 Declaration

In 1966, the Condominium Declaration (the 1966 Declaration) for Lafayette Place (Section One) was filed. Under the terms of the 1966 Declaration, it could be amended in two ways: (1) by written consent of 100% of the ownership interests, or (2) 51% of the ownership interests could vote to adopt an amendment to the Texas Condominium Act, provided that the statutory change "would not otherwise apply to the Condominium regime . . ."

### B. The 1984 Amendment to the Texas Condominium Act

In 1984, the Texas Condominium Act was amended to include a provision for amending condominium declarations. The statute provided:

> After a condominium declaration is recorded with a county clerk, the declaration may not be amended except at a meeting of the apartment owners at which the amendment is approved by the holders of at least 67 percent of the ownership interests in the condominium.

TEX. PROP. CODE § 81.111 (Vernon 1995). Thus, in 1984 the Condominium Act permitted a condominium declaration to be amended by a two-thirds majority vote of the homeowners.

### C. The May 1990 Notice to Homeowners of Proposed Amendment

In May 1990, Rene P. Lavenant, Jr., a member of the Condominium Board and a retired attorney, drafted the following notice to the condominium homeowners:

> In 1984, Code Sections 81.102(a) and 81.111 [Texas Property Code] were revised to provide that condominium declarations could be amended only at a meeting of the apartment owners (in our case the Council) at which the proposed amendment is approved by the holders of at least 67% of the ownership interests in the condominium.

> Paragraph 35 of our Declaration does not conform to the law as it now stands, and it is proposed to amend the Declaration to conform to the current statutory language[.]

### D. The 1990 Amendment to Paragraph 35

On June 25, 1995, the homeowners held a meeting to vote on the proposed amendment. At the meeting, 70.89% of the condominium ownership voted to adopt the following amendment:

> RESOLVED: The Condominium Declaration is hereby amended by substituting for the original Paragraph 35, AMENDMENTS, the following:

> 35. AMENDMENTS.—This Declaration may only be amended at a meeting of the Council at which the amendment is approved by the holders of at least 67 percent of the ownership interests in the condominium established by this Declaration. The resolution adopting any such amendment shall thereupon be executed by the presiding officer of the meeting and filed for record as an amendment of this Declaration.

At the meeting, appellants Hollis Dean, Lynette Negbi Dean, and Mary C. Wilbourn voted in favor of the amendment to paragraph 35. In fact, Hollis Dean seconded the motion proposing that the amendment be put to a vote. No one at the meeting voted against the 1990 amendment; the remaining 29.11% of the ownership interests were simply not present at the meeting.

### D. The Litigation

In 1996, a dispute between the homeowners arose over the issue of parking at the complex. Hollis Dean, one of the appellants, who was concerned that he did not have enough votes to block the Board's action on the parking issue, consulted a lawyer. Dean was informed by the lawyer that the 1990 amendment of paragraph 35 may have been invalid.

The Deans and the Wilbourns filed suit against the Board, alleging (1) that the Board induced the owners to vote for the amendment by disseminating a false and misleading notice that stated that Paragraph 35, as originally drafted, did not conform to the law, and (2) the amendment was void because paragraph 35 was amended on less than a 100% vote.

### 1. The June 27, 1997 Order

The case was submitted to the court based upon stipulated facts. After considering the stipulated facts and the briefing of the parties, the trial court held that (1) the June 25, 1990 vote amending the declaration was in violation of the declaration because it was not a vote of 100% of the owners; (2) the 1990 amendment was voidable, not void; and (3) there were disputed fact issues on the issue of whether the appellants had ratified the 1990 amendment.

### 2. The Bench Trial on the Issue of Ratification

The issue of ratification was tried to the bench. After testimony from both sides, the trial court (1) held that all of the owners the condominiums had ratified the 1990 amendment to the declaration; (2) declared the 1990 amendment valid and enforceable; and (3) ordered that the appellants take nothing by their suit.

This appeal follows.

### THE BOARD'S CROSS–POINT

In a single cross-point of error, the Board contends that even though the trial court properly granted the plaintiff's a take-nothing judgment, it erred in basing that judgment on ratification.

### A. Jurisdiction over the Board's Cross-point

Before reaching the merits of the Board's cross-point, we must first decide whether this Court has jurisdiction to do so. The issue raised is this: If an appellee is satisfied with the relief granted by the trial court, but wants to raise alternate grounds for the denial of any recovery by the appellant, must the appellee perfect its own appeal? We think not.

### 1. The Former Appellate Rules

Under the former rules for appellate procedure, an appellee was only required to perfect its own appeal in two situations: (1) the appellant had limited its appeal under former Tex.R.App. P. 40(1)(4) and the appellee wanted to complain about error relating to some portion of the judgment that was not raised in the limited appeal, *Hernandez v. City of Fort Worth,* 617 S.W.2d 923, 924 (Tex.1981); or (2) in a multiparty appeal, when the appellee wanted to complain about error involving a party to the judgment who was not designated as an appellee in the appellant's cost bond. *Lone Star Ford v. McCormick,* 838 S.W.2d 734, 741 (Tex.App.—Houston [1st Dist.] 1992, writ denied). In all other situations, an appellee could complain about any error in the trial court's judgment simply by raising a cross-point; there was no need to perfect a separate appeal. *Hernandez,* 617 S.W.2d at 924; *Lone Star Ford,* 838 S.W.2d at 741–42. In fact, an appellee who was satisfied with the trial court's judgment, but who had alternative grounds for affirming the judgment in its favor, could wait and raise those issues for the first time in a motion for rehearing, if the appellate court had reversed the trial court's judgment. *Oak Park Townhouses v. Brazosport Bank,* 851 S.W.2d 189, 190 (Tex.1993); *Chesshir v. First State Bank,* 620 S.W.2d 101, 102 (Tex.1981).

### 2. The New Appellate Rules

In 1997, the rules of appellate procedure were changed to provide that "[a] party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal." TEX. R. APP. P. 25.1(c). "The appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause." *Id.*

### 3. Application of the New Rules to this Case

■ Although the new rules of appellate procedure have been in place for almost two years, only one reported case has addressed the issue of cross-points. In *First Gen. Realty Corp. v. Maryland Cas. Co.*, 981 S.W.2d 495, 503 (Tex.App.—Austin 1998, pet. filed), the court of appeals affirmed the judgment in favor of the appellees, who had raised two alternative, independent grounds for affirmance. Because the court had ruled against the appellants on all grounds they raised, it declined to address the appellees' cross-points. *Id.* However, in dicta, the court stated, "Appellees correctly note that because their arguments do not ask for greater relief than that granted by the trial court, they were not required to file a notice of appeal as a prerequisite to presenting these arguments." *Id.*

■ We agree with the reasoning of the Austin court. If an appellee is satisfied with the relief granted by the trial court, but merely wants to present additional, independent grounds for affirming the trial court's judgment, no notice of appeal is required. The independent grounds for affirmance can be raised in a cross-point as long as the appellee is not requesting greater relief than that awarded by the trial court.[1]

In this case, the trial court's relief was: (1) a take-nothing judgment for the plaintiffs and (2) a declaration that the 1990 amendment was valid and enforceable. The Board is satisfied with this relief, but argues that affirmance is warranted not only on the basis of ratification by the homeowners, but also that, even without ratification, the amendment to the declaration was proper. Because the Board is not seeking greater relief than that awarded by the trial court, but is merely offering another ground for affirmance, no separate notice of appeal was necessary.

Accordingly, we have jurisdiction over the Board's cross-point and will address it on the merits.

## B. Validity of the 1990 Amendment

■ In its sole cross-point, the Board argues that the trial court erred in its June 25, 1997 order when it held that the 1990 vote amending the declaration was a violation of the 1966 Declaration. The Board contends that the 1990 amendment was valid because the 1966 Declaration allowed amendments to adopt newly-enacted provisions of the Condominium Act based upon a 51% vote of the ownership interests. To resolve this issue, we must interpret the 1966 Declaration.

■ If a declaration is worded so it can be given a certain or definite legal meaning, it is not ambiguous and the court will construe it as a matter of law. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Roman Catholic Diocese of Galveston–Houston v. First Colony Community Serv. Assoc., Inc.*, 881 S.W.2d 161, 163 (Tex.App.—Houston [1st Dist.] 1994, writ denied). A contract, however, is ambiguous if its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Roman Catholic Diocese*, 881 S.W.2d at 163. Whether a declaration is ambiguous is a matter of law for the court to decide. *Id.* If there is no ambiguity, the construction of the declaration is a question of law to be determined by the court. *Id.*

The 1966 Declaration provided in relevant part:

35. *AMENDMENTS.—Except as hereinafter provided in this paragraph*, the provisions of this Declaration shall not be changed or amended without the written consent of each and every unit

---

1. The appellate rules also provide that when the trial court renders a judgment notwithstanding the verdict, the appellee must bring forward by cross-point any issue or point that would have vitiated the verdict or that would have prevented an affirmance of the judgment if the trial court had rendered judgment on the verdict. TEX. R. APP. P. 38.2(b)(1). Our holding today in no way affects this requirement. We merely hold that rule 38.2(b)(1) is not the only situation in which cross-points are appropriate.

owner who in the aggregate represent 100% ownership of the common elements, and each such amendment shall be filed for record in the same manner as this Declaration.

. . . .

*Provided, however, that:*

*If any amendment hereafter made to the Condominium Act of the State of Texas would not otherwise apply* to the Condominium regime established by the recordation of this Declaration, then the Council may at any regular meeting or special meeting called for that purpose, adopt a resolution to amend this Declaration *in order to enable the application of any such amendment* to said Act to the condominium regime hereby established, provided that such resolution shall receive the affirmative vote of the unit owner or owners who represent at least 51% ownership interest in the common elements . . .

(Emphasis added).

Thus, the 1966 Declaration provided two methods for amending the document. First, it could be amended by 100% written consent of the homeowners. Second, it could be amended to adopt amendments to the Texas Condominium Act, provided that the statutory amendments "would not otherwise apply" to the condominium regime and the homeowners voted to adopt the statutory amendment by a 51% vote.

In this case, the 1990 amendment was passed based on a vote of 70 .89% of the condominium homeowners. Thus, we are concerned only with the second method of amending the Declaration, *i.e.,* a 51% vote to adopt statutory amendments.

By using the language "[e]xcept as herein provided in this paragraph," the declaration clearly expresses that in some cases an amendment could be accomplished by some means other than a 100% written vote. The second section of paragraph 35 sets out the circumstances under which such an amendment could be accomplished.

A plain reading of the second section of paragraph 35 shows that before an amendment on less than a 100% vote could be accomplished, four elements must be met: (1) there must be an amendment to the Condominium Act of the State of Texas, (2) that would "not otherwise apply" to the condominium regime; (3) the Board must adopt a resolution to amend the Declaration "to enable the application" of the statutory amendment; and (4) the resolution must be passed by an affirmative vote of 51% of the homeowners.

The parties in this case dispute the second element, *i.e.,* whether the 1984 amendment to Condominium Act "would not otherwise apply" to the condominium regime. The Board argues that the 1984 amendment authorized amendments to condominium declarations based on a vote of two-thirds of the homeowners. Because the 1966 Declaration required a vote of all of the homeowners, the Board argues that the 1984 amendment "would not otherwise apply" to the condominium regime.

The homeowners, however, argue that because TEX. PROP. CODE ANN. § 81.111 provides for amendments based upon a vote of "at least 67%" of the homeowners, it does nothing more than set a statutory floor for amendments. Because the 1966 Declaration exceeded this statutory floor, the plaintiffs argue that the 1984 amendment already applied to the 1966 Declaration. As such, plaintiffs contend that no amendment could be allowed based upon a 51% vote because the 1984 amendment to Condominium Act was already applicable.

While we agree that section 81.111 of the Property Code sets a statutory minimum of a 67% vote of the homeowners to amend condominium declarations, we do not agree that the amendment was already applicable to the 1966 Declarations simply because the 1966 Declaration met the statutory floor. The effect of the 1984 amendment was to allow, for the first time under the statute, amendments to declarations

based on a vote of as few as two-thirds of the homeowners. While the 1966 Declaration was lawful because it exceeded the statutory floor, it certainly did not take advantage of the law allowing an amendment based on a two-thirds majority. Thus, we hold that the 1984 amendment did not "otherwise apply to the condominium regime." "To enable the application" of the two-thirds majority required to amend under the 1984 statute, the Board adopted a resolution allowing amendments based on a 67% majority and obtained a vote of 70.89% of the homeowners approving the resolution.

Thus, we hold, as a matter of law, that the Board complied with the requirements of the 1966 Declaration by obtaining at least 51% of the homeowners' approval for the adoption of the 67% statutory floor to amend the Declaration.

We sustain the Board's cross-point.

### CONCLUSION

In light of our disposition of the Board's cross-point, in which we hold that the 1990 amendment was valid, we necessarily overrule all of appellants' points of error in which they complain that (1) the amendment was void, or (2) if merely voidable, it was not ratified. Although the trial court erred in holding that the 1990 amendment was voidable, but ratified, it correctly held (1) that the plaintiffs take nothing on their claims and (2) that the 1990 amendment to the Declaration was valid and enforceable.

Accordingly, we reform the judgment to delete any reference to ratification and affirm the judgment as reformed.