

# IN THE
# TENTH COURT OF APPEALS

### No. 10-19-00279-CV

**MELISSA BENNER, AS ADMINISTRATOR**
**OF THE ESTATE OF RUTH MARIE WARREN,**

**Appellant**

 **v.**

**KRYSTAL S. ARMSTRONG**
**AND JEFFERY LEE ARMSTRONG,**

**Appellees**

**From the 414th District Court**
**McLennan County, Texas**
**Trial Court No. 2012-3621-5**

### OPINION

Melissa Benner, as Administrator of the Estate of Ruth Warren, brought suit against Krystal and Jeffrey Armstrong to quiet title to 11.933 acres of real property. The trial court set aside the two challenged gift deeds but awarded the Armstrongs 9.9 acres after finding that they had pleaded and proved adverse possession. We reverse the trial court's judgment.

## BACKGROUND FACTS

Ruth Warren was the owner of the 11.93 acres of real property that is the subject of this suit. Melissa Benner is one of Ruth's eight children, and Wily Henderson, Krystal Armstrong's stepfather, was also one of Ruth's children. Ruth died on April 20, 2011, and Wily Henderson predeceased her.

The 11.93 acres consists of four parcels referred to as:

Tract A – a 4 acre parcel of land
Tract B – a 7.4 acre parcel of land
Tract C – a 0.24 acre parcel of land
Tract D – a 0.293 acre parcel of land

Prior to her death, Ruth lived in her home on Tract C. Wily Henderson lived on Tract D with his wife Judy Henderson, Krystal's mother. Judy continued living in the home on Tract D after Wily's death. Krystal and her husband Jeffrey lived for many years on land near the 11.93 acres and used a portion of the 11.93 acres to graze animals.

In two gift deeds recorded in the real property records of McLennan County on June 17, 2010, the entire 11.93 acres were conveyed to Krystal and Jeffrey Armstrong. In 2010, after the gift deeds were executed, Jeffrey and Krystal moved a manufactured home onto Tract A. The gift deeds are identified as P-1 and P-2 in the record. P-1 grants a portion of the 11.93 acres to Krystal and Jeffrey and also grants an easement. P-2 grants a portion of the 11.93 acres to Krystal and Jeffrey. In each gift deed, Ruth Warren, Judy

Henderson, and William Warren are identified as the grantors.[1]  The gift deeds are dated May 27, 2010, and appear to be signed by Ruth Warren, Judy Henderson, and William Warren.  They appear to be notarized by Rachel Yose.

Yose testified at trial that Krystal asked her to notarize an easement for William so that she could move a mobile home onto the property.  Yose said that she spoke to William on the phone, and he said he was signing an easement.  Krystal then brought the document to her and she notarized it.  She said she notarized a single piece of paper and that there were no other signatures on the document.  Yose testified that she never notarized any documents for Ruth or Judy.  Yose testified at trial that the first time she actually saw the documents identified as P-1 and P-2 was in 2018.  She stated that she did not know that her notary stamp and signature appeared six times on those documents.  Yose said that the signatures are not hers and that Krystal had access to her notary stamp and also had the ability to forge her signature.

Krystal testified at trial that P-1 and P-2 were not signed in the presence of a notary.  Krystal stated that she is unsure the date those documents were actually signed.  The record shows that Ruth was in the hospital on May 27, 2010 and could not have signed the gift deeds on that date.  Krystal acknowledged that there was a mistake in preparing the gift deeds and that they conveyed more than the parties intended.  Krystal testified,

---

[1] William Warren is Ruth Warren's son.  Why he, and not Wily Henderson or any of the other siblings were not identified as grantors is not material to the disposition of the issues before us in this appeal.

however, that she owns all of the 11.93 acres based upon the gift deeds identified as P-1 and P-2.

Benner brought suit on September 21, 2012 to quiet title to the entire 11.93 acres. After a bench trial in December 2018, the trial court set aside the two gift deeds as invalid based upon mistake. However, the trial court further awarded Tract A and B to Krystal based upon adverse possession except for the "Benner Tract[2]" that the trial court awarded to Melissa Benner. As a result, the trial court ultimately awarded to the Armstrongs 9.9 acres. The trial court found that Tract C and D are to be retained by the owners of record prior to the execution of the gift deeds. The trial court found that no property is awarded to Jeffrey Armstrong because he and Krystal divorced.

### ADVERSE POSSESSION

In five issues, Benner argues that the trial court erred in awarding the 9.9 acres from Tracts A and B to Krystal under each of the adverse possession statutes. The Texas Civil Practice and Remedies Code provides for adverse possession based upon periods of 3, 5, 10, and 25 years. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.024-16.028. The trial court's judgment was written generally and does not specify which statutory period it relied upon in awarding the property to Krystal. Benner addresses each statutory period

---

[2] The "Benner Tract" is a 1.5 acre tract of land located within Tract B. The trial court found that the Benner tract had not been surveyed, but the parties understand and agree to the location of the Benner Tract.

in a separate issue on appeal. Krystal and Jeffrey only address Benner's third issue that relates to the 10-year period for adverse possession.

Adverse possession is "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person" throughout the statutory period. TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(1). The statute requires that such possession be "inconsistent with" and "hostile to" the claims of all others. *Minh Thu Tran v. Macha*, 213 S.W.3d 913, 914 (Tex. 2006), *Moore v. Stone*, 255 S.W.3d 284, 288 (Tex. App. —Waco 2008, pet. den'd). One seeking to establish title to land by virtue of the statute of limitations has the burden of proving every fact essential to that claim by a preponderance of the evidence. *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990), *Moore v. Stone*, 255 S.W.3d at 288. Inferences are never indulged in the adverse claimant's favor. *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex.1985); *Moore v. Stone*, 255 S.W.3d at 288.

The 3-year limitations period statute for adverse possession provides that a person must bring suit to recover real property held by another in peaceable and adverse possession under title or color of title not later than three years after the day the cause of action accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.024. Additionally, the statute for the 5-year limitations period for adverse possession provides:

> (a) A person must bring suit not later than five years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who:
>> (1) cultivates, uses, or enjoys the property;

(2) pays applicable taxes on the property;  and

(3) claims the property under a duly registered deed.

TEX. CIV. PRAC. & REM. CODE ANN. § 16.025.   The gift deeds were filed in McLennan County on June 17, 2010, and Benner filed suit on September 21, 2012.   Therefore, Appellees did not establish adverse possession under Section 16.024 (3 year) or under Section 16.025 (5 year).  We sustain the first and second issues.

The 25-year limitations period statute for adverse possession in Section 16.028, provides in relevant part:

> (a) A person ... may not maintain an action for the recovery of real property held for 25 years before the commencement of the action in peaceable and adverse possession by another who holds the property in good faith and under a deed or other instrument purporting to convey the property that is recorded in the deed records of the county where any part of the real property is located.

TEX. CIV. PRAC. & REM. CODE ANN. § 16.028 (a).  Because the gift deeds were recorded in June 2010, and Benner brought suit in September 2012, Appellees do not establish adverse possession under § 16.028 (a).  We sustain the fifth issue.

There is also another 25-year limitations period that provides:

> A person, regardless of whether the person is or has been under a legal disability, must bring suit not later than 25 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property.

TEX. CIV. PRAC. & REM. CODE ANN. § 16.027.  The record shows that Krystal and Jeffrey moved onto the property near the 11.93 acres around 1991 and began using the 11.93

acres around that same time. The suit was filed September 21, 2012. Krystal and Jeffrey did not meet the 25-year requirement of Section 16.027. We sustain the fourth issue.

In the third issue, Benner argues that the trial court erred in awarding the property to Krystal under the 10-year adverse possession statute. The 10-year limitations period statute for adverse possession provides that:

> (a) A person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property.

TEX. CIV. PRAC. & REM. CODE ANN. § 16.027.

Krystal and Jeffrey did not move their home onto the 11.93 acres until 2010. Prior to that, they testified that they used the property to graze cattle and goats. The adverse claimant who relies upon grazing only as evidence of his adverse use and enjoyment must show as part of his case that the land in dispute was designedly enclosed. *McDonnold v. Weinacht*, 465 S.W.2d 136, 142 (Tex. 1971); *Moore v. Stone*, 255 S.W.3d at 288. If the fence existed before the claimant took possession of the land, and the claimant fails to demonstrate the purpose for which it was erected, then the fence is a "casual fence." *Rhodes v. Cahill*, 802 S.W.2d 643, 646 (Tex. 1990); *Moore v. Stone*, 255 S.W.3d at 288. Repairing or maintaining a casual fence, even for the express purpose of keeping the claimant's animals within the enclosed area, generally does not change a casual fence into a designed enclosure. *Moore v. Stone*, 255 S.W.3d at 288.

Krystal testified that Jeffrey maintained the property and that there was "existing fencing and some are repaired fencing." Krystal's testimony establishes that the fence was a casual fence and does not support a finding of adverse possession. Jeffrey testified, "We ran cattle on it ever since I got there, cattle and goats and chickens. We have used it for what it was meant to be used for." Jeffrey further testified that he built a "pipe entrance and just fences in general just lots of fences because it's a lots of property to keep." Jeffrey's testimony is not clear whether he built new fences where there had been no fences or merely replaced or repaired existing fences. Further, Jeffrey's testimony did not establish that the property was designedly enclosed to graze animals. The evidence does not establish adverse possession under the 10-year limitations period. *See Moore v. Stone*, 255 S.W.3d at 289. We sustain the third issue on appeal.

### CROSS-POINT

Krystal and Jeffrey bring a cross-point in which they argue that this Court can affirm, in part, the trial court's judgment by awarding the Krystal the property described in the legal description of the gift deed. Krystal and Jeffrey contend that the gift deed admitted as Exhibit P-1 granted four acres and an easement to four acres of the 11.93 acre tract and that there was no mutual mistake as to that deed. Krystal and Jeffrey argue that the gift deed, although not recordable, is enforceable against the parties to the deed.

Krystal and Jeffrey contend that if they are satisfied with the relief granted by the trial court, but merely want to present an additional independent ground for affirming the trial court's judgment, no notice of appeal is required citing *Dean v. Lafaette Place*, 999 S.W.2d 814, 818 (Tex. App. —Houston [1st Dist.] 1999, no pet.). Rule 25.1 (c) of the Texas Rules of Appellate Procedure provides that a "party who seeks to alter the trial court's judgment" must file a notice of appeal. Krystal and Jeffrey's requested relief would require this Court to alter the trial court's judgment. We do not have jurisdiction to consider the cross-point.

## CONCLUSION

Having sustained Appellant's issues on appeal, we reverse the trial court's judgment and remand this appeal to the trial court for proceedings consistent with this opinion.

JOHN E. NEILL
Justice

Before Chief Justice Gray,
    Justice Neill, and
    Justice Johnson
(Chief Justice Gray concurring)
Reverse and remand
Opinion delivered and filed March 17, 2021
[CV06]

